UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DNA GENOTEK INC., a Canadian Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SPECTRUM SOLUTIONS L.L.C., a Utah Limited Liability Company,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 21-cv-516-RSH-DDL<br><br>**ORDER ON MOTIONS TO SEAL**<br><br>**[Dkt. Nos. 149, 151, 165]** |

Before the Court are three pending motions to seal (the "Motions to Seal"). Dkt. Nos. 149, 151 and 165. Having considered the parties' arguments and the applicable law, and for the reasons explained below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Spectrum Solutions LLC's Motion for Leave to File Under Seal Documents in Support of Spectrum's Motion to Compel DNA Genotek to Produce Documents [Dkt. No. 149], **DENIES** Plaintiff DNA Genotek Inc.'s Motion for Leave to File Documents Under Seal [Dkt. No. 151] and **DENIES** Spectrum's Motion for Leave to File Under Seal Joint Submission Supplementing Motions to Seal [Dkt. No. 165].

# I.

# **BACKGROUND**

On September 30, 2022, Defendant moved to compel further responses to its request for "documents that [Plaintiff] provided to third parties in furtherance of a potential acquisition of [Plaintiff] or its parent." *See* Dkt. Nos. 148, 150 at 5. In connection with that motion,[1] the parties each moved to seal certain of their supporting exhibits and portions of any briefing that cited to, or revealed the contents of, those exhibits. *See* Dkt. Nos. 149, 151. The assertedly sealable information largely related to the potential acquisition referenced above, although Defendant also sought to seal certain other non-public data regarding the revenue Defendant generates from the allegedly infringing products (the "Revenue Information"). *See* Dkt. No. 149 at 3.

On October 17, 2022, the Court tentatively denied the Motions to Seal due to "the parties' failure to make a particularized showing that the information is protectable under Ninth Circuit law." *See* Dkt. No. 157. The Court held a hearing on Defendant's motion to compel on October 21, 2022. Dkt. No. 159. During that hearing, the Court requested supplemental briefing on the Motions to Seal, specifically directing the parties to address the concrete, particularized harm that would result from disclosure of the allegedly sealable information. *See* Dkt. No. 160. The parties timely filed the supplemental briefing (the "Supplemental Submission"), which was itself accompanied by a further request to seal. *See* Dkt. Nos. 164, 165.

/ / /

/ / /

---

[1] The Court has since denied the motion to compel, finding that the information sought was relevant, but was responsive to other document requests for which Plaintiff had already produced or would produce responsive, non-privileged documents. *See* Dkt. No. 162.

## II.
## **LEGAL STANDARDS**

The public enjoys "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This longstanding principle "is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016). Thus, when evaluating a request to seal judicial records, courts in this Circuit start with "a 'strong presumption in favor of access'" to those records. *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted).

The party requesting sealing bears the burden of overcoming this strong presumption. *Id*. The showing required depends upon whether the underlying motion is closely related to the merits of the case – in which case the party must demonstrate "compelling reasons" to seal – or is only "tangentially related" to them, which requires a less demanding showing of good cause. *See Ctr. for Auto Safety*, 809 F.3d at 1097. Most courts apply the "good cause" standard to discovery motions. Although less demanding than the "compelling reasons" standard, "good cause" nevertheless requires a "particularized showing that specific prejudice or harm will result" if the information is disclosed.[2] *See Phillips ex rel. Estates of Byrd v. Gen Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002). "Broad allegations of harm, unsubstantiated by specific examples of articulated reasoning," do not

---

[2] The undersigned's Chambers Rules require the designating party to join the motion to seal because that party will often be in the best (if not the only) position to make the required "particularized" showing of a concrete, non-speculative harm that will from disclosure. *See* Chambers Rules for the Honorable David D. Leshner ("Chambers Rules"), § III.G.

satisfy the good cause standard. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

## III.
## DISCUSSION

The parties request sealing, in whole or in part, of a total of six exhibits,[3] certain other business information, and any part of their briefing on the motion to compel or the Supplemental Submission that reveal their allegedly confidential information. The parties' requests are as follows:

| **Document to Be Sealed** | **Exhibit or Docket Number(s)** |
|---|---|
| ***Documents for Which Redactions Are Requested*** ||
| Defendant's Third Set of Requests for Production to Plaintiff | Def. Ex. 1<br>Pl. Ex. 2 |
| Plaintiff's Responses to Defendant's Third Set of Requests for Production | Def. Ex. 2<br>Pl. Ex. 3 |
| Meet and confer correspondence between counsel, dated 7/26/22-9/13/22 | Def. Ex. 6<br>Pl. Ex. 4 |
| References to the above exhibits in Defendant's Motion to Compel (the "Motion"), Plaintiff's Opposition (the "Opposition") and the Declaration of Brian M. Kramer in Support of the Opposition ("Kramer Decl." and, collectively, the "Moving Papers") | Dkt. Nos. 150, 152, and 152-1, *passim* |

---

[3] The parties' filings are complicated by their filing of duplicate copies of the supporting exhibits, which needlessly proliferated the parties' sealing requests. *Compare* Defendant's Exhibit ("Def. Ex.") 1 *with* Plaintiff's Exhibit ("Pl. Ex.") 2; Def. Ex. 2 *with* Pl. Ex. 3; Def. Ex. 3 *with* Pl. Ex. 5; Def. Ex. 4 *with* Pl. Ex. 8; Def. Ex. 6 *with* Pl. Ex. 4. For future motions, the parties are instructed not to file duplicative exhibits.

| Revenue Information | Dkt. No. 150 at page 8, line 17 |
|---|---|
| Supplemental Submission | Dkt. No. 164 at 2 |
| **Documents Requested to Be Sealed in Their Entirety** | |
| Plaintiff's Responses to Defendant's First Set of Requests for Production | Def. Ex. 4<br>Pl. Ex. 8[4] |
| Plaintiff's Responses to Defendant's First Set of Interrogatories | Def. Ex. 5 |
| Mutual Confidentiality Agreement ("MCA") | Pl. Ex. 7 |

The parties advance three main arguments in support of their various requests for sealing. *First*, as to Defendant's Exhibits 1, 2, 4, 5, and 6; Plaintiff's Exhibits 2, 3 and 4; the Revenue Information; the Moving Papers; and the Supplemental Submission, the parties assert that the documents contain confidential business information that would be detrimental to their respective business interests if disclosed. *Second*, as to all documents for which they request sealing, the parties state these were designated as "Confidential" or "Highly Confidential" by one or more parties under the operative Protective Order. *See* Dkt. No. 34-1. *Third*, as to Plaintiff's Exhibit 7, Plaintiff states that the parties to this contract agreed to keep it confidential, irrespective of its designation under the Protective Order.[5] The Court addresses each of these arguments in turn.

---

[4] Plaintiff filed an excerpt of this document publicly and without redactions. *See* Pl. Ex. 8. The parties acknowledge the magistrate judge previously assigned to the case denied a request to seal that excerpt. *See* Dkt. No. 119; Dkt. No. 149 at 3.

[5] As noted, the parties were required by the undersigned's Chambers Rules to join each other's respective motions to seal *to the extent the motion concerned information the joining party designated confidential.* Chambers Rules, § III.G. Instead, the parties joined one another's motions to seal *in toto* and largely parroted the other side's reasoning for sealing. *See generally* Dkt. Nos. 155, 156. For simplicity, the Court has focused its discussion on the arguments advanced by each party in its respective motion to seal; to the extent the same basis for sealing

A. **Confidential Business Information**

Defendant asserts that "there is good cause" to seal "portions of [Defendant's] Exhibits 1, 2 and 6 . . . and portions of [Defendant's Motion] quoting or referring to those exhibits" because they each contain confidential business information whose disclosure could be potentially harmful to Spectrum. *See* Dkt. No. 149 at 3. Defendant's sealing motion is supported by its counsel's declaration, in which he avers identically as to each of these documents that it "contains confidential, non-public information about the parties in this action, the public disclosure of which would be detrimental to at least Spectrum's business." *See* Declaration of Brandon G. Smith ("Smith Decl."), Dkt. No. 149-1, at ¶¶ 3-5. Defendant states that the Revenue Information is also "non-public" and "confidential" and that its disclosure would likewise be "detrimental to Spectrum's business." Dkt. No. 149 at 3; *see also* Smith Decl. at ¶ 8.

Plaintiff moves to seal Plaintiff's Exhibits 2, 3, and 4, on the basis that these documents were designated confidential under the Protective Order. Dkt. No. 151 at 2-3. The Court addresses this argument more fully below, but notes that Plaintiff apparently reasons that anything so designated is necessarily also protectable business information because the Protective Order was entered in recognition that "the unrestricted disclosure of [the parties'] information could be potentially prejudicial to the [parties'] business or operations." *See id.* at 2 (citing Dkt. No. 34-1 at ¶ 5.a). Further, in support of Plaintiff's motion to seal, its counsel declares that Exhibits 2, 3 and 4 reference "non-public information relating to both parties, the disclosure of which could be prejudicial to the parties' businesses." *See* Declaration of Drew A. Hillier ("Hillier Decl."), Dkt. No. 151-1, at ¶¶ 2-4. Plaintiff also seeks to seal paragraph 10 of the Kramer Declaration because it "contains

---

was advanced by the other party in its joinder, the same reasoning applies.

confidential information that would be potentially harmful" to Plaintiff's business if publicly disclosed. Dkt. No. 151 at 3.

As the parties acknowledged during the October 21, 2022, hearing, Plaintiff's parent company announced in January 2022 that it was "seeking . . . strategic alternatives" and that "anyone in the business would read that press release and say, Okay, they're looking into merger and acquisition discussions of some sort." *See* Dkt. No. 163 at 6. In the Supplemental Submission, however, the parties state that while the *fact* of a potential merger was publicly known, the discussions surrounding a possible merger were not public and that revelation of any of the details of the transaction or negotiations could damage the parties to those discussions by putting them at a competitive disadvantage. Dkt. No. 166 at 2. They reiterate that the parties to those discussions agreed among themselves that their negotiations should remain confidential and point out that other courts have sealed similar "non-public information about 'potential acquisition of businesses and technologies.'" *Id.* Defendant also repeats its request to seal the Revenue Information, stating that the disclosure of this information could put Defendant "at a competitive disadvantage" and that the Court granted a prior request to seal its financial data, including revenue data. *See id.* at 3 (citing Dkt. No. 91). Finally, the parties argue that Defendant's discovery requests to Plaintiff, and Plaintiff's responses thereto, are sealable because "a sophisticated viewer" could piece them together "to gain competitive insight into commercially sensitive business information" regarding one or both parties. *Id.*

The Court finds Defendant has done just enough to establish good cause to seal the Revenue Information. The Court appreciates that Spectrum is not publicly traded, but that alone is not a reason to seal all non-public information about the company. Nevertheless, the Court finds that details about Defendant's revenue could be used inappropriately by a competitor, that the request for redaction of this information is narrowly tailored, and that the Revenue Information was not central

to the resolution of Defendant's motion to compel. *See BBK Tobacco & Foods LLP v. Central Coast Agric. Inc.*, No. CV-19-05216-PHX-MTL, 2021 WL 5578864, at *2 (D. Ariz. Nov. 29, 2021) (granting narrow request to seal "revenue and sales figures [and] marketing expenditures").  Furthermore, the Court is mindful that the magistrate judge previously assigned to the case found Defendant's financial data, including its revenue, sealable, and finds no reason to depart from that ruling.  *See* Dkt. No. 91.  Accordingly, the Court **GRANTS** the request to seal the Revenue Information.

The Court finds, however, that the parties have failed to establish good cause to seal the remainder of their "non-public" and "confidential" business information. The parties' rote assertions that the disclosure of this information "could be prejudicial," "potentially harmful," or "detrimental" to the parties' commercial interests (*see* Dkt. Nos. 149 at 3; 151 at 3) are exactly the type of unsubstantiated allegations of nonspecific harm that courts in this Circuit have repeatedly found do not satisfy the good cause standard.  *See Anderson v. Marsh*, 312 F.R.D. 584, 594 (E.D. Cal. 2015) (citation omitted); *see also Apple Inc. v. Samsung Elecs. Co.*, No. 11–CV–01846 LHK (PSG), 2013 WL 412864, at *2 (N.D. Cal. Feb. 1, 2013) (denying motion to seal where party "recite[d] boilerplate terms that this information is proprietary and confidential," but "[did] not provide a particularized showing of how this information would be detrimental if disclosed"); *In re BofI Holding, Inc. Sec. Litig.*, No. 15-cv-2324-GPC-KSC, 2021 WL 5579222, at *4 (S.D. Cal. Nov. 30, 2021) (finding a party's "generic reference to 'highly sensitive information'" was not sufficient to show good cause for sealing).

The parties' Supplemental Submission does not remedy this deficiency, as its vague, conjectural statements do not establish a specific, non-speculative harm that would result from disclosure of the information. *See Vasquez v. O'Reilly Auto Enter., LLC*, No. 1:21-cv-01099-DAD-SAB, 2022 WL 1645145, at *4 (E.D. Cal. May 24, 2022) (finding party's request for sealing "conclusory" and insufficient to satisfy

the good cause standard where party did not "elaborate[e]" on statements that documents contained information about "business processes and management decisions"). For example, the parties generically describe a competitor's unspecified competitive advantage that might be gained from disclosure of their business information and posit that a "sophisticated viewer" might "gain competitive insight" into the parties' businesses from a review of the parties' discovery. Dkt. No. 166 at 2-3. But how? What insight? And what use would the hypothetical third party make of the information and the insights gained thereby? The Court is left to speculate.

The cases relied upon by the parties do not assist them, because the question for the Court is not whether similar information has been sealed before, but whether the parties have made the necessary showing that it is sealable in this instance. Further, based on the Court's independent review of the materials, it does not appear that the documents reveal trade secrets, technological specifications, calculations, or the mechanics of the proposed transaction, distinguishing the instant case from those relied upon by the parties. *See, e.g.*, *Connor v. Quora, Inc.*, No. 18-cv-07597-BLF, 2020 WL 11590589, at *2 (N.D. Cal. Sept. 22, 2020) (sealing documents that contained "technical details"); *Workplace Tech. Research, Inc. v. Project Mgmt. Inst., Inc.*, No. 18cv1927 JM (MSB), 2021 WL 6066119, at *2 (S.D. Cal. Aug. 10, 2021) (sealing documents that could be used as a blueprint for negotiations) (citations omitted); *In re Hewlett-Packard Co. Sh'holder Derivative Litig.*, No. 12–CV–6003, 2015 WL 8570883, at *5 (N.D. Cal. Nov. 18, 2015) (granting motion to seal corporate governance documents that provided "an outline of [the Company's] procedures") (citations omitted).

"[C]ourts will seal records containing detailed confidential business information" *only* "where the parties articulate a concrete, non-speculative harm" that would result from disclosure. *Grano v. Sodexo Mgmt., Inc.*, No. 18-cv-1818-RSH-BLM, 2022 WL 3371621, at *2 (S.D. Cal. Aug. 16, 2022). On the record

before it, the Court finds the parties have not done so. Therefore, the Court **DENIES** the parties' requests to seal nonpublic business information.

### B. Designation Under a Stipulated Protective Order

As noted above, Plaintiff asserts that there is good cause to seal Plaintiff's Exhibits 2, 3, 4 and 7, and references thereto because the parties have designated "Confidential" or "Highly Confidential" pursuant to the operative Protective Order. Dkt. No. 151 at 2-3 (citing Dkt. No. 34-1); Hillier Decl., at ¶¶ 2-5. For the reasons stated above, the Court does not find that the parties have established a concrete, non-speculative harm from the disclosure of this information. To the extent Plaintiff (or Defendant) advances the parties' designation of the documents and information pursuant to the Protective Order as an independent basis for sealing, the Court rejects it.

As an initial matter, that position is not supported by a plain reading of the Protective Order, which expressly states that designated documents will not be filed under seal "without a separate prior order" of the Court based on "a request that establishes that the document, or portions thereof, is privileged or otherwise subject to protection under the law." Dkt. No. 34-1 at ¶ 28.

Furthermore, it is well established in this Circuit that the designation of documents as confidential pursuant to a blanket protective order is not a basis for sealing, because they "are entered to facilitate the exchange of discovery documents" and do not make any "findings that a particular document is confidential or that a document's disclosure would cause harm." *Small v. Univ. Med. Ctr. of S. Nevada*, No. 13–cv–00298–APG–PAL, 2015 WL 1281549, at *3 (D. Nev. Mar. 20, 2015); *see also Beckman*, 966 F.2d at 476 (noting that blanket protective orders are "by nature overinclusive" and do not require a "'good cause' showing under [Rule] 26"). As the Ninth Circuit has explained, "confidential categorization of discovery documents under the [blanket] protective order was not a guarantee of confidentiality, especially in the event of a court filing" because the

Court is required to "mak[e] an individualized determination" as to the sealing of "specific documents." *Kamakana*, 447 F.3d at 1183.

Accordingly, Plaintiff's request to seal documents on the basis that the documents were designated "Confidential" by one or more parties is **DENIED**.

## C.  Agreement to Keep Information Confidential

The parties also urge sealing of the MCA, because "the parties agreed to the confidentiality of the agreement when it was executed." Dkt. No. 151 at 3; *see also* Dkt. No. 166 at 2. However, "the fact that parties contract or agree to treat certain information . . . as confidential is an insufficient basis in and of itself for a court to seal a judicial record and override the public's interest in understanding the judicial process." *Grano*, 2022 WL 3371621, at *2 (collecting cases); *see also Anderson*, 312 F.R.D. at 594 (finding that "the parties' agreement that documents shall be filed under seal" does not satisfy the good cause standard). A contrary ruling would render the public's right of access meaningless. The Court therefore **DENIES** the parties' request to seal the MCA on this basis.

## IV.
## CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1. Defendant Spectrum Solutions LLC's Motion for Leave to File Under Seal Documents in Support of Spectrum's Motion to Compel DNA Genotek to Produce Documents [Dkt. No. 149], is **GRANTED** as to the information at Dkt. No. 150 at page 8, line 17 and **DENIED** in all other respects.
2. Plaintiff DNA Genotek Inc.'s Motion for Leave to File Documents Under Seal [Dkt. No. 151] is **DENIED**.
3. Defendant Spectrum Solutions LLC's Motion for Leave to File Under Seal Joint Submission Supplementing Motions to Seal [Dkt. No. 165] is **DENIED**.

/ / /

4. The parties shall file the following documents on the public docket in unredacted form within 10 days of this Order: Dkt. No. 150 (redaction of page 8, line 17 permitted); Dkt. No. 150-1; Dkt. No. 150-2; Dkt. No. 150-3; Dkt. No. 150-4; Dkt. No. 150-5; Dkt. No. 152; Dkt. No. 152-1; and Dkt. No. 166.

**IT IS SO ORDERED.**

Dated: November 3, 2022

*David Leshner*

Hon. David D. Leshner
United States Magistrate Judge